UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DENNIS RIVERA-SERVERA, § | |
|     Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:17-CV-0379-G-BK |
| § | |
| NANCY BERRYHILL, § | |
| Acting Commissioner of Social § | |
| Security, § | |
|     Defendant. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b)(1)(B), this case has been referred to the undersigned for pretrial management. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 12, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 14, should be **DENIED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

**I. BACKGROUND**

    **A. Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"). Plaintiff originally filed for benefits in August 2013, claiming that he became disabled in December 2007. Doc. 7-7 at 2-8. Plaintiff's application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 7-3 at 2-4; Doc. 7-3 at 16-32; Doc. 7-4 at 22-34; Doc. 7-5 at 4-6, 11-13, 16-18.

**B. Factual Background**

Plaintiff was born in 1976 and was 31 years old on his alleged date of disability onset. Doc. 7-7 at 2, 4. He had a high school education, some college, attended the police academy, and past relevant work as a systems administrator and cashier. Doc. 7-3 at 43, 72-74. Plaintiff served in the Gulf War as a paratrooper for more than three years and, in 1998, was determined to be disabled due to combat-related injury. Doc. 7-12 at 30-37; Doc. 7-18 at 8. Specifically, in 1997, he injured his lower back when his parachute failed to deploy, and he fractured his left femur and knee along with other service-related injuries. Doc. 7-18 at 6-7.

As relevant here, Plaintiff was hospitalized for four days in October 2006 for suicidal ideation, depression, and severe chronic pain lasting over ten years. Doc. 7-17 at 3, 6. He was diagnosed with major depressive disorder, moderate, without psychotic features. Doc. 7-17 at 7. In December 2007, Plaintiff reported that he was taking his prescribed anti-depressant, but his anxiety had increased to the point that he rarely left home. Doc. 7-16 at 68. Additionally, he reported suicidal ideation with no plan, pain, and depression. Doc. 7-16 at 69. In May 2008, Plaintiff reported that he always felt tired, an increase in his anti-depressant dosage did not help, and he struggled with concentration, focus, and motivation. Doc. 7-16 at 65.

In July 2010, Plaintiff reported anhedonia (inability to experience pleasure from activities usually found enjoyable), lack of motivation, depression, difficulty sleeping, and an inability to get out of bed. Doc. 7-18 at 17. In October 2011, Dr. Victoria Menold, M.D., noted that Plaintiff had an abnormal gait, motor weakness on one of his left-hand fingers, a positive straight leg raise test on the left, left side abnormal weakness, left thigh atrophy, paraspinal tenderness, and muscle tightness. Doc. 7-17 at 59-60. Dr. Menold diagnosed Plaintiff with chronic pain

2

secondary to cervical spine degenerative disc disease with radiculopathy on the left and degenerative joint disease of the knees that was worsening.  Doc. 7-17 at 60.

In November 2011, Plaintiff again reported lack of motivation and anhedonia and became tearful during his medical examination.  Doc. 7-16 at 54-55.  The treating nurse practitioner determined that Plaintiff's status was worsening and added an additional anti-depressant to his regimen.  Doc. 7-16 at 55-56.  By April 2012, Plaintiff's appearance had changed, he could not remember the last time he shaved, he was gaining weight, and he was disheveled.  Doc. 7-16 at 51-52.  From March to July 2013, Plaintiff underwent six pain-coping skills sessions, during which the clinical psychologist, Dr. Stacey Sandusky, Ph.D., noted that Plaintiff's mood and affect were dysphoric, he was tearful when discussing his quality of life and pain, and he had "no desire to do anything."  Doc. 7-9 at 47, 64-65; Doc. 7-10 at 13-14.

In May 2013, Dr. Nazimuddin Qazi, M.D., noted that Plaintiff's "mental health issues" had to take precedence because they were not conducive to a more active lifestyle and participation in pain management plans.  Doc. 7-9 at 50.  In July 2013, Dr. Qazi noted that Plaintiff was non-compliant with treatment for his neck and back pain.  Doc. 7-14 at 39.  That same month, Plaintiff's cognitive status was assessed, and he demonstrated poor eye contact and positioned his head on a cane, sometimes nodding off.  Doc. 7-14 at 37.  He stated that he was not engaging in physical activity as recommended, did not bring his exercise logs to the treatment session, was minimally motivated, and did not see any benefit to pain management or outpatient treatment.  Doc. 7-14 at 37.  The following month, he complained of anhedonia and low motivation despite taking his antidepressants, and he admitted to less frequent personal hygiene as evidenced by his beard and long hair.  Doc. 7-9 at 33.  Plaintiff made only intermittent eye contact, his insight was fair, and his status was worsening.  Doc. 7-9 at 33-34.

In October 2013, a non-examining psychiatrist from Disability Services concluded that Plaintiff's mental impairments were non-severe, he had only mild difficulties in social functioning and in maintaining concentration, persistence, or pace, and he had the capacity to perform light work. Doc. 7-4 at 32-33, 37. In January 2014, a non-examining psychologist concurred with this assessment. Doc. 7-4 at 67-68.

In December 2013, Plaintiff reported that his depressed mood continued, and he was anxious, not sleeping well, and had chronic pain. Doc. 7-11 at 48-49. The following month, Dr. Qazi reported that Plaintiff lacked the motivation to attempt to cope with his pain, and that his depression and mental health issues possibly worsened his pain perception. Doc. 7-11 at 40. The doctor noted that Plaintiff was able to perform his activities of daily living without assistance. Doc. 7-11 at 41. It was also documented in the record that Plaintiff had either cancelled or not shown up for numerous doctors' appointments in late 2013. Doc. 7-11 at 40.

In November 2014, Plaintiff was examined by clinical psychologist Dr. Eric Mariano, Ph.D., who noted that Plaintiff reported feeling restless, had low energy and motivation, had anxiety, would barely leave his apartment, and was having sudden panic attacks that Plaintiff thought were heart attacks. Doc. 7-12 at 63. Dr. Mariano diagnosed Plaintiff with "unspecified depression vs. due to [general medical condition] pain vs. [major depressive disorder], unspecified anxiety, [rule out] panic, [rule out] PTSD," and he was continued on psychotropic medications. Doc. 7-12 at 63-64.

In January 2015, Plaintiff underwent a psychological evaluation conducted by Dr. Christina "Niki" Ryser, Ph.D. Doc. 7-13 at 15-28. In response to a series of interrogatories, Dr. Ryser opined that when Plaintiff is symptomatic with depression/anxiety and chronic pain/fatigue, he (1) cannot understand, carry out, and remember even simple instructions "on a

4

regular and continuing basis [i.e.], [eight] hours a day, [five] days a week, month in and month out"; (2) is markedly limited in his ability to maintain attention and/or focus for extended periods of time during a 40-hour workweek, even with simple, repetitive work-related tasks; (3) is markedly limited in his ability to interact appropriately with others and complete a normal work schedule without interruption from psychologically based symptoms; and (4) is markedly limited in coping with work stresses and changes in a routine work setting. Doc. 7-13 at 15-16.

In an appended psychological evaluation, Dr. Ryser noted that Plaintiff's depression, anxiety, and lack of motivation appeared to have negatively impacted his ability to comply with recommended treatments. Doc. 7-13 at 18-19. Dr. Ryser diagnosed Plaintiff with (1) panic disorder; (2) major depressive disorder, recurrent, moderate; (3) post-traumatic stress disorder; and (4) psychological factors affecting other medical conditions, moderate. Doc. 7-13 at 27. The doctor concluded that Plaintiff's prognosis was poor without the needed treatment, but his lack of motivation and pessimism had interfered with his compliance with potentially helpful treatments. Doc. 7-13 at 27.

In her functional capacity assessment, Dr. Ryser opined that Plaintiff could understand, carry out, and remember most one- or two-step instructions.[1] Doc. 7-13 at 28. Additionally, the doctor found that Plaintiff could not sustain concentration and persist in work-related activity at a reasonable pace, could not maintain effective social interaction with others on a consistent basis, and would struggle when dealing with normal work pressures. Doc. 7-13 at 28.

---

[1] While this appears to differ somewhat from the finding Dr. Ryser made in the interrogatories to the effect that Plaintiff could not manage such instructions, the interrogatories addressed whether Plaintiff could do so "[eight] hours a day, [five] days a week, month in and month out." *Cf.* Doc. 7-13 at 15 *with* Doc. 7-13 at 28. Moreover, Dr. Ryser stated in the interrogatories that there was no conflict between her answers thereto and her psychological evaluation. Doc. 7-13 at 17.

5

### C. The ALJ's Findings

In March 2016, the ALJ determined that Plaintiff has the severe impairments of "history of left femoral fracture (with surgical rod placement); arthritis; degenerative changes and foraminal narrowing of the cervical spine; spondylosis of the lumbar spine with early osteoarthritic changes of the sacroiliac joints; sleep apnea; obesity; and depression and anxiety." Doc. 7-3 at 20. In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ found, based on the opinions of the two non-examining mental health consultants, that Plaintiff could perform a limited range of light work, follow one- to two-step simple instructions, and have occasional contact with coworkers, supervisors, and the public. Doc. 7-3 at 22-23. The ALJ gave little weight to Dr. Ryser's opinions, finding them unsupported by the record. Doc. 7-3 at 28. Based on a vocational expert's testimony, the ALJ concluded that Plaintiff could not return to his past work, but could perform other work available in the national economy. Doc. 7-3 at 31-32.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

6

if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to

probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III. ARGUMENT AND ANALYSIS

Plaintiff raises several issues on appeal, but because one of the issues warrants reversal and remand for further proceedings, the Court need not address the others.[2] Specifically, Plaintiff argues that the ALJ's mental RFC finding is not supported by substantial evidence because no treating or examining medical source found that Plaintiff could sustain one- to two-step, simple instructions and have occasional contact with others. Doc. 13 at 31-36 (citing *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995)). Defendant responds that it is the ALJ's responsibility to assess a claimant's RFC, and the ALJ considered the entire record and fully accommodated Plaintiff's mental impairments. Doc. 15 at 10-12.

The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

---

[2] Although the Court does not undertake to examine Plaintiff's other arguments, he may raise those issues on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58.

Courts have therefore consistently found that an ALJ's RFC determination is not supported by substantial evidence when the ALJ has failed to either elicit or take into account the opinion of a treating or examining physician. *See Raper v. Colvin*, 262 F.Supp.3d 415, 422 (N.D. Tex. 2017) (Godbey, J.) (collecting cases holding that an ALJ is not permitted to reject all relevant medical opinions and then independently assess a claimant's RFC without medical evidence addressing the effects of the claimant's impairments on his ability to work).

Here, the ALJ found Plaintiff capable of (1) performing a limited range of light work, with the psychological limitations that he could only perform one- to two-step, simple instructions; and (2) having occasional contact with others. Doc. 7-3 at 23. While the ALJ gives the non-examining doctors' opinions "significant weight" or "some weight" in arriving at this RFC, Doc. 7-3 at 22-23, those doctors did not treat or examine Plaintiff. The ALJ consequently could not wholly defer to their opinions to determine how Plaintiff's mental health impacted his ability to work. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990) (explaining that the reports of non-examining physicians do not provide substantial evidence when such reports "constitute the sole medical evidence presented" or "when a non-examining physician makes specific medical conclusions that either contradict or are unsupported by findings made by an

9

examining physician"); *Fitzpatrick v. Colvin*, No. 15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) (Fitzwater, J.) (finding that the ALJ "improperly made an independent RFC finding" as to "the effects of [the claimant's] mental impairments on his ability to work" where "other than the opinions of the two [state agency medical consultants]," there was no evidence speaking to the claimant's ability to work despite his impairments). Instead, the ALJ should have obtained an additional expert medical opinion regarding the types of work, if any, the claimant can perform given his impairments. *Ripley*, 67 F.3d at 557.

This error alone, however, does not automatically warrant reversal of the Commissioner's decision. "Procedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) (citations omitted). When an ALJ commits a *Ripley* error, "[p]rejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 558 n.22 (citation omitted).

The evidence of record does not substantially support the ALJ's conclusion that Plaintiff was not disabled because there is no adequate medical opinion supporting the ALJ's finding that Plaintiff has the RFC to perform the degree of light work he found. *Villa*, 895 F.2d at 1023-24; *see Fitzpatrick*, 2016 WL 1258477, at *8 (finding that the ALJ's mental RFC assessment was not supported by substantial evidence where he rejected the only medical opinions addressing the claimant's ability to work, and the other evidence of record did not support a conclusion that the plaintiff could work despite his impairments). In sum, the ALJ improperly made an RFC finding based on the non-examining consultants' opinions, which conflicted with the one acceptable medical opinion that directly addressed the effects of Plaintiff's mental impairments on his

ability to work. *Id.* Accordingly, this case should be reversed and remanded for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 12, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 14, should be **DENIED**, and the Commissioner's decision should be REVERSED, and this case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on March 9, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

   A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); F<small>ED</small>. R. C<small>IV</small>. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE